UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

The Honorable Judge Cathy Seibel



UNITED STATES OF AMERICA,

                  Plaintiff,

V.                                       **7:16-CR-00408-CS-3**

Virginia Blanco,

                  Defendant.

---

## EMERGENCY MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

TO UNITED STATES DISTRICT JUDGE: Honorable Cathy Seibel

This motion is being submitted pro se.

1

Defendant, Virginia Blanco files this emergency motion to re-sentence her to a sentence of imprisonment of time-served, a reduction in sentence or alternatively, a sentence of time-served followed by a term of supervised release not to exceed the balance of her original prison sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat.5194, 5239 (Dec. 21, 2018).

## I. _COVID-19, Conditions at FCI Danbury, Defendant's Family Hardships and Defendant's Medical Conditions Present  Extraordinary and Compelling Reasons Warranting Her Release or Reduction in Sentence_

## BACKGROUND

Ms. Blanco is currently incarcerated for Bank Robbery, Bank Robbery Conspiracy and Aiding and Abetting the discharge of a firearm.

On May 29, 2019, following a trial by jury, the Court assessed punishment at 120 months and one day imprisonment. Defendant was initially held at the Westchester County Jail in Westchester, New York and was eventually designated and transferred to the minimum security Federal Prison Camp in Danbury, CT (FPC Danbury), where she currently resides.

Ms. Blanco  has a documented medical history in the BOP consisting of, among other things, Severe Depression , PTSD, Postpartum Depression (of which she is required to take daily psychiatric medications for), High Cholesterol and Obesity with a Body Mass Index (BMI) of 36.7

Her current list of daily medications include Trazodone (100mg) and Duloxetine (60mg). Doctors in Westchester County also prescribed various medications to Defendant to treat those conditions.

In the middle of 2020, the District of Connecticut saw a suit filed on behalf of the inmates at FCI Danbury against the Warden of the facility (3:20-cv-00569-MPS).  This suit was brought by the Yale Law Group.   The Honorable Judge Michael Shea (District of Connecticut) has blasted Danbury's Administration for failure to act on the Orders of the Attorney General.  Judge Shea issued a Temporary Restraining Order ordering FCI Danbury Warden to implement the procedures outlined in various Justice Department memorandums.  More on the point,  Judge Shea stated that there may be an Eighth Amendment violation (Cruel and Unusual Punishment);

2

*"The Warden has another source of authority she may use to remove medically vulnerable inmates from the dangerous environment at FCI Danbury, and at the same time reduce the density within the prison for all inmates. Unfortunately, the record in this case makes clear she is not making adequate use of that authority either. Specifically, neither the Warden nor the BOP as a whole is implementing Section 3582(c)(1)(A) in the way Congress intended when it adopted the First Step Act, and neither has made any noticeable effort to update the process for evaluating "compassionate release" requests to take account of the COVID-19 pandemic. For the medically vulnerable inmates at FCI Danbury, this failure bolsters my conclusion that Petitioners have shown a likelihood of success on the merits on their claim that the Respondents are displaying deliberate indifference in violation of the Eighth Amendment."*

*Pursuant to the initial agreements reached between the court and parties involved, Defendant falls into the group warranting release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). Ms. Blanco has filed the required Administrative Remedies and was denied by the Warden making this motion ripe to be heard.*

The relative prevalence of defendants health conditions does not diminish the extraordinary risk of complications that she  faces . Thus, Courts have released inmates with precisely these, and other similarly prevalent but nonetheless deadly, health risks under 3582. See United States v. Wen, No. 6:17-cr-06173 EAW, 2020 WL1845104, at *2(WDNY Apr 13, 2020) (granting compassionate release motion to defendants suffering from asthma as "people with moderate to severe asthma may be at a higher risk of getting very sick from COVID-19.  United States v. Sawicz 08-CR-287 (ARR), 2020WL space 181-5851, at *2 (EDNY April 10, 2020) (granting compassionate release based on defendants hypertension.); United States V. McCarthy, Nos. 3:17-cr-0230 (JCH), 3:92-cr-0070 (JCH), 2020 WL 1698732, at *1, *5 (D. Conn. Apr 8, 2020) (finding extraordinary and compelling reasons for release of inmate convicted of armed bank robbery because he was elderly and had health conditions that increase COVID-19 risk including asthma and COPD). United States V. Harris, No. 18 CR. 364 (PGG), (Dkt 414) at 1, 3 (SDNY Apr 8, 2020 (finding extraordinary compelling reasons for release of inmates with asthma and Crohn's disease, which made him particularly vulnerable to COVID-19). United States v. Zukerman, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *1, *5 (SDNY Apr. 3, 2020) (finding extraordinary and compelling reasons for release of inmates with diabetes hypertension and obesity because of the great risk that COVID-19 poses to a person with underlying health problems)

Suffering from a serious physical and medical condition and mental health issues that substantially diminishes the ability of the defendant to provide self-care in the environment of a correctional facility, constitutes "extraordinary compelling reasons,"

3

under 18 U.S.C. 3582(c)(1)(A)(i).  Ms. Blanco  plainly meets that standard. Her numerous underlying health conditions place her at serious medical risk if she becomes reinfected with COVID-19, and then in the prison environment she is powerless to practice self-care necessary to minimize that risk. This mortal danger is simply not a just punishment for Ms. Blanco's crimes warranting her release for the "extraordinary compelling reasons" that COVID-19 and the conditions at FCI Danbury Camp present.

While it is true that Defendant was diagnosed with Covid-19 on December 12, 2020, Defendant continues to feel the effects on her body. During the period when Ms. Blanco first fell ill to this virus, she was symptomatic and experienced fever , aches and pains throughout her body, headaches, labored breathing and had lost her sense of taste. Many of those symptoms continue on today.

The fact is, we don't know enough about this virus to fully ascertain the consequences and probability of becoming reinfected. Reinfection does occur. Whatever the chances of reinfection are, they grow exponentially when the person is left in an environment that contradicts CDC Guidelines regarding social distancing as the Defendant finds herself in today.  Defendant resides in an open dorm consisting of 12 inmates who are in very close proximity to each other at all times, sharing the same facilities. Sanitizing materials are provided sporadically,  sometimes with weeks having gone by in between handouts and masks are not provided.

The CDC has said:

"CDC is actively working to learn more about reinfection to inform public health action. CDC developed recommendations for public health professionals to help decide when and how to test someone for suspected reinfection. CDC has also provided information for state and local health departments to help investigate suspected cases of reinfection. We will update this guidance as we learn more about reinfection.

**Prevention**
At this time, whether you have had COVID-19 or not, the best way to prevent infection is to take steps to protect yourself:
> Wear a mask in public places
> Stay at least 6 feet away from other people
> Wash your hands
> Avoid crowds and confined spaces"

https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html

Three out of the four steps mandated by the CDC are not practiced at FCI Danbury Camp leaving the inmates housed there at much greater risk of infection.

4

Ms. Blanco has been confined for over 31 months (a considerable amount of time by anyone's estimates) and has had one minor disciplinary incident over a year ago. She has worked hard, taken countless classes, and kept her head down. In candor, her confinement has been utterly life changing. The classes and programs which she has taken have given her the tools to succeed and be a productive member of society. Defendant has maintained constant employment working in the Food Service Warehouse with excellent work performance reviews.

Defendant also receives a tremendous amount of satisfaction and a sense of purpose through mentoring other inmates. This has allowed her to spend time with more vulnerable inmates who have lost direction and hope in their lives. She has taught several inmates subjects like Math, Science and Language Arts enabling them to go on and obtain their GED's. Ms. Blanco maintains strong family ties however due to the suspension of visitation throughout the BOP almost a year ago due to covid-19 Defendant has been unable to see her infant children and family.

## II. COVID-19 WITHIN THE BOP

COVID-19 unleashed itself on the inmate population and staff at BOP facilities around the country beginning in February of this year, hitting FCI Danbury particularly hard. Like many state and government institutions, the BOP was caught off guard and was completely unprepared.

A look at the bop's website from February 5, 2021 indicates that, to date, there has been over 45,000 inmates which have ever tested positive for COVID-19 (over 2200 of which are currently positive) and 216 inmates which have died.

"02/05/2021 - The BOP has **123,452** federal inmates in BOP-managed institutions and **13,877** in community-based facilities. The BOP staff complement is approximately **36,000**. There are **2,205 federal inmates** and **1,729 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **44,182** inmates and **4,497** staff have recovered. There have been **216** federal inmate deaths and **3** BOP staff member deaths attributed to COVID-19 disease."

https://www.bop.gov/coronavirus/

Former Attorney General William Barr issued a memorandum on March 26, 2020, authorizing the BOP to transfer at-risk, non-violent inmates who pose minimal likelihood of recidivism from BOP facilities to home confinement to protect the safety of BOP personnel and the inmate population in the face of COVID-19.

5

https://www.justice.gov/file/1262731/download

The former Attorney General recognized that some inmates may be safer at home than in BOP facilities. Ms. Blanco is such an inmate.

Ms. Blanco's efforts to exhaust her administrative remedies have been fruitless. She applied for release to home confinement in May, 2020 and was denied with the sole reason being that she is incarcerated for a crime of violence. Ms. Blanco qualifies under all other BOP Guidelines for Compassionate Release.

For many years, 18 U.S.C. § 3582(c)(1)(A) has allowed district courts to reduce sentences of federal inmates for "extraordinary and compelling reasons," often referred to as "compassionate release." Until December 21, 2018, only the Director of BOP could request such a sentence reduction.

Under the First Step Act, BOP no longer has a monopoly on the decision whether to file "compassionate release" motions. Rather, federal inmates may file them with the original sentencing court. 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

The Sentencing Commission policy statement on reductions of sentences under 18 U.S.C. § 3582(c)(1)(A) lists three specific categories of "extraordinary and compelling reasons" but expressly does not restrict what combination of factors can warrant release. U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(D))

The three specific categories are: (1) terminal illness of the inmate, or an irrecoverable serious physical, medical, or mental issue that prevents the inmate from providing himself with self-care within the prison; (2) age of the defendant, combined with a serious deterioration in physical or mental health because of the aging process; and (3) death or incapacitation of the caregiver of the inmate's minor children, or incapacitation of the inmate's spouse or partner. See U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(C)).


"Extraordinary and compelling reasons" warrant a reduction of Ms. Blanco's sentence and immediate release from confinement.


## III. FAMILY HARDSHIP

As the Court is aware, Ms. Blanco was released on Bail immediately following her arrest. She respected all conditions of the court and remained under Pretrial Supervision until the conclusion of her trial, where she was ordered remanded. At that time, Ms. Blanco was two months pregnant and on February 8, 2019 gave birth to a beautiful baby girl. After

four days in hospital, Defendant's newborn daughter was taken away from her and Defendant was returned to Westchester County Jail. At present Defendant's mother, Yolanda Almonte, is caring for Defendant's three children and finding it extremely difficult. Ms. Almonte is disabled and suffers various medical conditions. She is scheduled to have a mandatory surgery which will require her to be in bed for several weeks. This has been postponed by Ms. Almonte, at her detriment, due to her having the Defendant's two year old, three year old and her pre-teen in the home, Ms. Almonte is relying on family and friends as much as possible to watch the children when she has to be present at regular doctors appointments or caring for them when she is not feeling well but is finding it more and more difficult with several medical conditions. Her only income is in the form of a monthly Disability payment.

A sentence reduction is consistent with and supported by the factors in 18 U.S.C. § 3553(a), whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable." Two of those factors now carry more weight than at the time of sentencing: (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and (2) "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a)(2)(D).


First, Ms. Blanco's vulnerability to COVID-19 weigh in favor of reducing her sentence. Second, she is confined in the lowest security facility available in the BOP and poses a minimal risk of recidivism. She has no prior criminal history. She poses no threat of violence to the community should the Court release her from custody. Third, her impeccable conduct in prison weighs heavily in her favor. Fourth, she has a re-entry plan that will prevent recidivism and ensure her health and safety as well as the public's health and safety should the Court reduce her sentence. A family member can pick her up from the Danbury facility within 2 hours of this Court granting the motion and ordering her release from prison. She will be driven to her mothers residence in Manhattan, New York where he will reside with her mother and her three children during any period of supervised release. She will self-quarantine at home as long as necessary to ensure her health and safety and that of others. And she will obtain suitable, gainful employment enabling her to make her court ordered financial obligations whole. In sum, the § 3553(a) factors weigh heavily in Ms. Blanco's favor.


This Court is in the business of weighing equities to make consequential decisions. Yet, other than habeas corpus proceedings in death penalty cases, few prior cases could have presented the potential, if not likely, life-or-death consequences that this case presents. The Court should grant this motion because so rarely do justice and mercy require the same result. See Walker v. Martel, 709 F.3d 925, 950-51 (9th Cir. 2013) (Gould, J.,

7

concurring in part & dissenting in part) ("Shakespeare told us that '[t]he quality of mercy is not strain'd,' Milton instructed us to "temper so [j]ustice with mercy" and advised us that '[m]ercy [must] colleague with justice,' and President Lincoln reminded us that 'mercy bears richer fruits than strict justice.'") (citations omitted); The Torah, Micah 6:8 ("what does the Lord require of you but to do justice, and to love kindness, and to walk humbly with your God.").

IV. CONCLUSION

After more than thirty-one months of confinement, facing serious medical conditions and an extreme family hardship,  Virginia Blanco is prepared to walk humbly in this world. She respectfully requests that the Court grant this motion and re-sentence her  to a sentence of imprisonment of time-served, a reduction in sentence or alternatively, a sentence of time-served followed by a term of supervised release not to exceed the balance of her original prison sentence. Should the Court require additional development of the record before it rules on this motion, Ms. Blanco requests that it conduct an emergency evidentiary hearing to determine the extent of the health and safety crisis in the Bureau of Prisons Danbury facility as well as Ms. Blanco's family circumstances concerning the welfare of her children. Defendant's mother stands ready to submit an affidavit or be heard by the court if needed.

**Respectfully Submitted,**

VB

**Virginia Blanco #79564-054**

**FCI Danbury**

**Federal Correctional Institution**

**Route 37**

**Danbury, CT   06811**

8

Virginia Blanco 79564-054
33½ Pembroke Rd
Danbury, Ct 06811

RECEIVED
FEB 10 2021
CHAMBERS OF
CATHY SEIBEL
U.S.D.J.



Hon. Cathy Seibel
United States District Court Judge
300 Quarropas Street
White Plains, NY 10601