Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601



Virginia Blanco 79564-054 FDC Philadelphia
Federal Detention Center PO. Box 562
Philadelphia, PA 19105

August 18, 2022

Re: U.S.A v. Blanco
16 Cr. 408 (CS)
28 U.S.C. § 2255

Dear Judge Seibel,

I am contacting you in regards to my 28 U.S.C. § 2255.

The complex parts I am referring to are the rules that govern the 28 U.S.C. § 2255. In the facility that I am currently serving my sentencing at does not have a full functioning Law Library.

I believe if council is appointed and a hearing is held, I will flourish. I have been able to compile three more solid arguments with supporting evidence to prove the government was prejudice at my trial. In addition, the arguments I have acquainted, the Government was aware or should have been aware of.

I have no objection with the court's permission allowing the Government to respond to the three grounds I want to bring fourth when they respond on September 12, 2022 to my United States v. Taylor response.

Respectfully Submitted,

V.B
Virginia Blanco

ONE:

On June 29, 2018 the Government submitted a 404 (b) motion to introduce "newly discovered" evidence of Ms. Blanco possessing and selling narcotics on behalf of co-defendant Marte. The rationale advanced for this "bad acts" evidence was that it allowed the jury to understand their relationship of mutual trust " It demonstrates that prior to their discussions about the bank robbery, for a period of several years, their personal and criminal lives were intertwined. This late disclosure was not covered by Marte's plea agreement which he signed a year ago on June 21, 2017, (see 3502-C).

During Marte's proffer meetings he never disclosed this information to the Government. Furthermore on June 21, 2017 Marte plead guilty to several other narcotic charges excluding distributing pills. (See 3503-D)

Count four charges a violation of Title 21, United States Code, Section 846, in connection with the defendant's participation in a conspiracy, between in or 2004 and in or about May 2016, to distribute and posses with intent to distribute (i) 1 kilogram or more of mixtures and substances containing a detectable amount of herion, 5 kilograms or more of mixtures and substance containing a detectable amount of cocaine, and 280 grams or more of mixtures and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841 (b)(1)(A), and (ii) 100 kilograms or more of mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(B). This charge carries a maximum term of imprisonment of life; a mandatory minimum term of imprisonment of ten years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine, pursuant to Title 21, United States Code Section 841(b)(1)(A) and Title 18, United States Code, Section 3571, of the greatest of $10,000,000 twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment. (See 3502-C page 2)

3502-C page four number three (3) participating in a conspiracy to distribute and posses with internet to distribute cocaine, herion, crack cocaine, and marijuana between in or about 2004 and in or about May 2016, as charged in Count four of the Information;

On June 21, 2017 on page 28 of Marte's 3502-D:

The Court: All right. Thank you. Now, as to Count Four, Mr. Marte, which charges you with narcotics conspiracy, can you tell me, in your own words, what you did that makes you guilty of that offense.

The Defendant: From 2004 to 2016, I used to sell a lot of drugs.

The Court: And specifically did you sell at at least a kilo of herion, 5 kilos of powder cocaine, 280 grams of crack, and 100 kilos of marijuana?

(3502-D page 28 lines 18-25)
The Defendant: Yes, your Honor.
(3502-D page 29 line 1)

There was no mention of Marte possessing or distributing any pills in his proffer agreement or his sentencing nor was Marte charged with possession or the distribution of pills.

After Marte made the Government aware that he use to sell pills.

However the Government was able to elect last minute evidence and testimony that Virginia Blanco took part in Marte's drug operation. Marte even testified to possession and distribution of pills and personal use.

Marte's Proffer:

(10) the possession and personal use of marijuana between in or about 2004 and in or May 2016. (3502-C)

Furthermore Marte testified in open court to the personal use of Percocets:

Q. Mr. Marte, have you used drugs yourself?
A. Yes
Q. What drugs?
A. Marijuana, Percocets.
(Page 118 Lines 12-15 Doc142)

Q. And when did you start taking pills?
A. When I was about - - I would say approximately 16, 17.
Q. How often would you take pills?
A. Just sometimes occasionally.
(Page 118 & 119 lines 23-25 & 1 Doc 142)

Trial Transcript:

Q. Over the course of your life, what kinds of drugs have you sold?
A. Cocaine, crack cocaine, heroin, pills, marijuana.
(Page 109 lines 22-24 Doc 142.)

Q. Let's talk about the pills you sold. What types of pills?
A. M30's and Percocets.
Q. What is a M30?
A. Painkiller.
Q. When did you start selling pills ?
A. When I was approximately 15, 16 years old.
(Page 111 lines 19-25 Doc 142.)
Q. And when did you stop?
A. When I got arrested in 2016.
Q. On average, about what quantities were you selling a week of painkillers or pills ?
A. When I first started, just a few hundred. As I got older, a few thousands.
Q. Focusing on that second period when you were selling a few thousands, what years did that generally cover ?
A. I would say 2011 through 2013, '14.
Q. And focusing on that second period from 2011 onward, how much were you making a week from selling pills?
A. A few thousands a week.
(Page 112 lines 1-12 Doc 142.)

Q. At 14, at 15, did you start selling anything else?
A. Yes. Approximately 15 or 16.
Q. And what did you start selling?
A. Cocaine and pills.

(Page 208 line 5-8 Doc. 142)

Q. And which drug were you selling back then ?
A. In 2012?
Q. Yes, sir.
A. Marijuana, cocaine, pills.
Q. Any pills at that time?
A. And pills, yes.
Q. Now, the pill business in 2012, how much money did you make off of that?
A. Few thousands.
Q. Per week?
A. Yes.
Q. So in 2012, just so I got it straight, you are doing some drug dealing robberies, and you were also selling pills and marijuana; correct?
A. Repeat the question?
Q. In 2012, you did - - I think you told us you did two drug dealer robberies, and you were also selling pills and marijuana; is that correct?
A. And Cocaine.
( Page 218 lines 7-25 Doc 142.)

Q. Before you were arrested in May of 2016, while you were doing the Herbalife you were still selling drugs, correct?
A. Yes, but not that much.
Q. And that drug at that time in 2016 was?
A. Cocaine, pills, marijuana.
(Page 223 lines 8-13 Doc 142.)

TWO:

On June 21, 2017, Geovanni Marte signed his proffer agreement. Marte acknowledged the requirements to disclose not only his crimes but all the crimes he knew about and all the crimes others committed.

On page four (4) number eight (8) of Marte's 3502-C proffer agreement Marte acknowledged he took part in three (3) shootouts with the Trinitarios:

(8) discharging a firearm in Trinitarios gang territory in or about 2009; test-firing a firearm in or about 2013; and discharging a firearm in Trinitarios gang territory in or about 2013.

While testifying Marte states:

Q. You testified earlier that you were involved in three shootouts. When were these shootouts?
A. One was in 2008. One was in 2009. The last one was in 2013.
Q. And who was involved in these shootouts?
A. Just the Tito and some other guys that I grew up with.
A. Did you ever have a shootout against anyone other than the Trinitarios gang?
A. No
Lines 11-19 page 123 Doc.142.

However a year later after Marte signed his proffer agreement, on June 29, 2018, Marte's 3502-PP witness prep with the initials S.A and J.B in the top right corner standing for AUSA Sam Adelsberg and AUSA Jamie Bagliebter meaning both AUSA's were present during the time of this meeting and they were both aware Marte had already signed his proffer agreement on June 21, 2017.

Marte inform the AUSA's of another shootout he took part in. This shootout was not disclosed to the Government on or before the signing of Marte's proffer agreement.

This is a crime disclosed to the Government after the signing of Marte's June 21, 2017 and not covered by his plea agreement.

Committed a shoot out w/ Smiley B/C they broke his car window. (3502 -PP. page 1)

Marte was never charged with this crime nor was there ever a mention of it during trial or Marte's sentencing.

The Government knew about this crime or should have known about this crime either way Marte only testified to taking part in three shootouts instead of four.

Furthermore FBI 302 reports also reflect information that Marte's Co-Defendant Jefferey Martinez had committed a home invasion in March of 2016 in New Jersey, a crime not covered by his plea agreement.

THREE:

On direct, Mr. Adelsberg asked Giovanni Marte:

Q. Mr. Marte, other than selling drugs and robbing the bank, did you ever commit other crimes?
A. Please repeat that question?
Q. Sure. Other than selling drugs and robbing the bank, did you ever commit other crimes?
A. Yes
Q. I got into a few fist fights. I got into three shootouts and robbed a few drug dealers.
Doc.142, Page.122

Q. You described your involvement in drug dealing, robberies, fights, shootouts, gun possession and drug smuggling. Were you ever arrested for these crimes?
A. Yes.
Q. How many times?
A. Once.
Q. What happened at that time?
A. Got into a fist fight.
Q. When was that?
A. 2000, late 2014, early 2015.
Q. And what was the charge?
A. Assault
Q. What happened to those charges?
A. I plead guilty to disorderly conduct and assault.
Q. So other than that one arrest, were you ever arrested for any other activity that you described?
A. No
Doc.142, Pages 131-132.

A FOIA request letter was sent on October 6, 2021. This letter was received by Lt. Richard Mantellino of the New York City Police Department on November 2, 2021. On January 25, 2022, Lt. Mantellino sent a response to the FOIA request stating the request must be denied due to Public Officers Law Section 87(2)(a). These records are sealed under court order, pursuant to Criminal Procedure Law Section 160.50. (Please see attached).

The crux of the matter is the response from Lt. Mantellino proves Giovanni Marte was in fact arrested prior to his testimony of only being arrested one time. Furthermore, Giovanni Marte's proffer notes with Douglas Zoklind made the Government aware of the arrests during the time of Mr. Adelsberg direct examination of Giovanni Marte.

On March 28, 2017, proffer note 3502-N page three (3) with Giovanni Marte while Douglas Zoklind being present states:

January 10, 2015 - got into accident on Nagel & Academy. Charged w AVO 3rd b/c license suspended.

January 19, 2015 - Marte driving to Pathmark. Pulled over charged w AVO 3rd. Fine but GM thinks he did not pay.

In conclusion the government claims Giovanni Marte's testimony was self-impeaching. It has been proven that Mr. Marte's testimony was untruthful. Furthermore Ms. Blanco has proven in several different ways how her trial attorney was ineffective and how Ms. Blanco's attorney's ineffectiveness meets the two prong test set forth in Strickland. Ms. Blanco humbly request that council is appointed and a hearing is granted.

Respectfully Submitted,

V.B.
Virginia Blanco

Lt. Richard Mantellino
Legal Bureau – FOIL Unit
One Police Plaza, Room 110-C
New York, NY 10038

Daniel Sullivan
106 valentine Lane Apt 1E
Yonkers, Ny 10705

October 6, 2021

Dear Lt. Mantellino

Under the provisions of the New York Freedom of Information Law, Article 6 of the Public Officers Law, I hereby request a copy of records or portions thereof pertaining to Giovanni Marte D.O.B October 31, 1991 with arrest dates January 10, 2015 and January 19, 2015.

I am respectfully requesting any police reports, supplementary reports and accusatory reports that is in possession or control of the New York City Police Department, with the name Giovanni Marte D.O.B October 31, 1991 with arrest dates January 10, 2015 and January 19, 2015.

Respectfully Submitted,



POLICE DEPARTMENT
LEGAL BUREAU
F.O.I.L Unit, Room 110C
One Police Plaza
New York, NY 10038

Daniel Sullivan
106 Valentine Lane
Apt 1E
Yonkers, NY, 10705

November 2, 2021

FOIL Request #: FOIL-2021-056-16176
Your File #:

Dear Sir or Madam:

    This is in response to your request received by this office on November 2, 2021 in which you requested access to certain records under the New York State Freedom of Information Law (FOIL).

    Your request has been assigned to Chinnock (646-610-6445) of this office. Before a determination can be rendered, further review is necessary to assess the potential applicability of exemptions set forth in FOIL, and whether the records can be located. I estimate that this review will be completed, and a determination issued within 90 business days of this letter.

    This is not a denial of the records you requested. Should your request be denied in whole or in part, you will then be advised in writing of the reason for any denial, and the name and address of the Records Access Appeals Officer.

**Note: Due to issues caused by the COVID-19 pandemic there may be extensive delays, lasting up to one year, in determining your request.**

Very truly yours,

Richard Mantellino
Lieutenant
New York City Police Department (NYPD)



POLICE DEPARTMENT
LEGAL BUREAU
F.O.I.L Unit, Room 110C
One Police Plaza
New York, NY 10038

Daniel Sullivan
106 Valentine Lane
Apt 1E
Yonkers, NY, 10705

January 25, 2022

FOIL Request #: FOIL-2021-056-16176
Your File #:

Dear Sir or Madam:

This is in response to your request received by this office on November 2, 2021 in which you requested access to certain records under the New York State Freedom of Information Law (FOIL).

I must deny access to the records you requested on the basis of Public Officers Law Section 87(2)(a). These records are sealed under court order, pursuant to Criminal Procedure Law Section 160.50 and can only be requested by the arrested person or their representative.

In order to release these records, this unit must receive a notarized affidavit from the arrested person or their representative within thirty (30) days of the date of this letter, addressed to the attention of Chinnock (646-610-6445), who has been assigned to handle your case. Failure to do so will result in this file being CLOSED.

You must notify this unit of any changes to address. Failure to do so will render this unit unable to give you the document(s) you requested.

Very truly yours,

LT /s/

Richard Mantellino
Lieutenant
New York City Police Department (NYPD)